UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ONEILL E. DEER,

Plaintiff,

-against-

DEPARTMENT OF VETERANS AFFAIRS; NORTHPORT VA MEDICAL CENTER; MIAMI VA MEDICAL CENTER; PUBLIC HOUSING AUTHORITY/COMMUNITY DEVELOPMENT CORPORATION OF LONG ISLAND (CDLI); GABRIELLA PETRORO, LMSW; DEAN PATRICK CARBONETTI, LCSW; CASSANDRA ANN D'ACCORDO; LA'SHON F. BLACK, LCSW; JOHN MENDEZ, PhD, LCSW,

Defendants.
---------------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-5547 (OEM) (JMW)

ORELIA E. MERCHANT, United States District Judge:

On September 8, 2026, *pro se* plaintiff Oneill E. Deer ("Plaintiff"), a Navy veteran currently residing in an emergency shelter, commenced this civil rights action against defendants the Community Development Corporation of Long Island ("CDLI"), Department of Veterans Affairs ("VA"), Northport VA Medical Center ("Northport VA"), Miami VA Medical Center ("Miami VA"), and Gabriella Petroro, Dean Patrick Carbonetti, Cassandra Ann D'Accordo, La'Shon F. Black, and John Mendez, in their individual and official capacities.[1] *See generally* Complaint, Dkt. 1 ("Complaint" or "Compl.").[2] That same date, Plaintiff filed a motion for an

---

[1] The VA, Northport VA, Miami VA, Gabriella Petroro, Dean Patrick Carbonetti, Cassandra Ann D'Accordo, La'Shon F. Black, and John Mendez are referred to collectively as the "Federal Defendants." Gabriella Petroro, Dean Patrick Carbonetti, Cassandra Ann D'Accordo, La'Shon F. Black, and John Mendez are collectively referred to as the "Individual Defendants."
[2] When citing exhibits within the Complaint, the Court refers to the page numbers contained in the automatically generated ECF header.

Order to Show Cause for a Temporary Restraining Order ("TRO") and Preliminary Injunction, Dkt. 4 ("Emergency Motion").[3] The Court denied the portion of Plaintiff's Emergency Motion that sought a TRO and set a briefing schedule with respect to the portion of Plaintiff's Emergency Motion that sought a preliminary injunction. Order, dated Sep. 9, 2026.

Now before the Court is Plaintiff's fully briefed motion for a preliminary injunction.[4]

In his Emergency Motion, Plaintiff alleges that Defendants wrongly denied his Violence Against Women Act ("VAWA") emergency transfer application on behalf of himself and his co-head of household pursuant to 34 U.S.C. § 12491 and 24 C.F.R § 5.2003, wrongly denied his Section 8 Portability right pursuant to 42 U.S.C. § 1437f(r) and 24 C.F.R § 982.354(c)(2), and wrongfully subjected to administrative delays which require mandatory tolling of Plaintiff's voucher under 24 C.F.R § 982.303(b).[5] Emergency Motion at 9. Plaintiff asks the Court to order Defendants to: (i) toll the expiration of Plaintiff's HUD-Veterans Affairs Supportive Housing ("HUD-VASH") Voucher retroactively to August 14, 2026, and grant a 60-day extension of said voucher; (ii) process and approve Plaintiff's VAWA emergency transfer; (iii) waive any localized lease-up policy or residency requirement for Plaintiff's voucher status or emergency portability;

---

[3] When citing exhibits within the Emergency Motion, the Court refers to the page numbers contained in the automatically generated ECF header.

[4] *See* Defendant Community Development Long Island's Memorandum of Law in Opposition to Plaintiff's Application for a Preliminary Injunction, Dkt. 11 ("CDLI Opposition" or "CDLI Opp'n"); Federal Defendants Memorandum of Law in Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction, Dkt. 38 ("Federal Defendants' Opposition" or "Federal Defendants' Opp'n); Plaintiff's Emergency Reply Memorandum & Supplemental Declaration Rebutting Defendants' Opposition, Dkt. 40 ("Reply").

[5] In his Complaint, Plaintiff raises additional claims, including that Defendants are illegally withholding housing mobility rights under 29 U.S.C. § 794 and 5 U.S.C. § 552a, violations of the Privacy Act, and violations of the Rehabilitation Act and federal fair-housing protections. Compl. ¶¶ 2, 30-33. As Plaintiff does not raise those claims as a basis for the Emergency Motion, the Court does not evaluate them now in deciding said motion. In Plaintiff's Reply, he briefly asks for relief the original Emergency Motion did not raise, including that the Court order certain files be transferred pursuant to the Privacy Act. Reply at 3-4. As the parties did not have a chance to fully brief these claims in response to the Emergency Motion, the Court declines to address them now. *See, e.g.*, *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir. 1999) ("We need not consider this argument because it is raised for the first time in his reply brief."); *Ctr. for Indep. of Disabled, New York v. Metro. Transp. Auth.*, 17-CV-2990 (GBD) (VF), 2023 WL 5744408, at *6 (S.D.N.Y. Sep. 6, 2023) ("It is well settled, however, that an argument raised for the first time in a reply brief is waived.").

(iv) "immediately place Plaintiff into HUD-VASH 'light touch' aftercare status" or "approve the use of VA Connect/Telehealth to support temporary remote case management, removing local VA[] case management interference due to documented administrative conflicts of interest"; and (v) enjoin "Defendants from altering, restricting, or blocking Plaintiff's access to VA Secure Messaging." *Id.* at 1-2. For the following reasons, Plaintiff's Emergency Motion for preliminary injunctive relief is denied.

**BACKGROUND**

Plaintiff is a Navy veteran who has been homeless since January 15, 2026. Emergency Motion at 3. On January 18, 2026, Plaintiff contacted VA through its hotline seeking emergency housing placement.[6] *Id.*

On June 15, 2026, Plaintiff was admitted to Defendant Northport VA's HUD-VASH Program[7] and attended his first case management meeting with his assigned social worker. Declaration of Gabriella Petroro ¶ 1-2, Dkt. 41 ("Petroro Decl."). On July 8, 2026, Plaintiff was issued a HUD-VASH voucher, which was immediately effective and initially set to remain effective through November 5, 2026. *Id.* ¶ 4. CDLI Opposition Declaration of Tricia Gleaton ¶ 8, Dkt. 11-1 ("Gleaton Decl."); Compl. Exhibit A1 at 12-14. Plaintiff alleges that although he received an approval letter from Defendant Northport VA on July 8, 2026, he did not receive the actual physical voucher until August 12, 2026. Emergency Motion at 3.

[6] The Homeless Veterans Community Assistance Program supports low-income individuals and families in need of rental assistance. 42 U.S.C. § 1437f(a). Through this program, the U.S. Department of Urban Housing and Development ("HUD") annually funds local public housing agencies ("PHAs"), who in turn administer federal funds to qualifying individuals in the form of Housing Choice Vouchers ("HCVs"). 42 U.S.C. § 1437f(b)(1); 24 C.F.R. § 982.1(a)(1). All HUD based housing vouchers must be administered in accordance with HUD regulations. 24 C.F.R. § 982.52(a).

[7] HUD and the VA jointly administer specialized HUD-VASH vouchers to assist homeless veterans. *Section 8 Housing Choice Vouchers: Revised Implementation of the HUD-Veterans Affairs Supportive Housing Program* ("*HUD-VASH Implementation Regulation*"), 89 Fed. Reg. 65769 (Aug. 13, 2024). HUD-VASH "combines [ ] rental assistances for homeless veterans administered by PHAs with case management and supportive service provided through VA." *Id.* at 65770.

On or about July 21, 2026, two weeks after the initial issuance, Plaintiff contacted Defendant Northport VA requesting it facilitate a transfer of his HUD-VASH from Nassau County, New York to Fort Lauderdale, Florida, where Defendant Miami VA is located. Petroro Decl. ¶ 7; Gleaton Decl. ¶ 9; CDLI Opposition Exhibit 1 at 2-3, Dkt. 11-2, ("Email, dated July 22, 2026"); Compl. Exhibit B at 31. Petitioner states that he made this request to seek "housing stability in an environment that provides reasonable access to family and loved ones to support mental and economic stability" and his "minor child in particular." *Id.* at 28.

Later that day, Defendant Northport VA contacted Defendant Miami VA regarding "porting"[8] availability, as requested by Petitioner, and informed Petitioner of this communication. *Id.*; Petroro Decl. ¶ 7.

According to Plaintiff, that same day, he formally requested a transfer from Defendant Northport VA to Defendant Miami VA under VAWA because of severe domestic violate threats his partner, Latasha Small-Felix, listed as co-head of household on Plaintiff's HUD-VASH voucher, was experiencing. Emergency Motion at 3; Compl. at 10.

On July 23, 2026, Plaintiff directly emailed Defendant Miami VA requesting it accept his HUD-VASH transfer request and provide case management services. Compl. Exhibit C at 35. On July 28, 2026, Defendant Northport VA was informed that Defendant Miami VA denied Plaintiff's request to port, and Defendant Northport VA communicated that determination directly to Plaintiff by telephone. Petroro Decl. ¶ 8.

On July 29, 2026, Plaintiff advised Defendant Northport VA directly over email that his

[8] The "portability" of a HUD-VASH voucher depends on the availability case management services in the receiving jurisdiction. *See HUD-VASH Implementation Regulation* at 65774 (noting "[a]n eligible family issued a HUD-VASH voucher must receive required case management services provided by the partnering VA medical facility").

port-out request was an emergency transfer request pursuant to VAWA,[9] as his co-head of household was the victim of domestic violence. Compl. Exhibit B at 21-22.[10]

On July 31, 2026, Plaintiff had a case management meeting with his assigned social worker at Defendant Northport VA where he was informed of the option to convert his HUD-VASH voucher into a regular Section 8 voucher and port to Miami without the same restrictions on VA approval or resources that come with a HUD-VASH voucher.[11] Petroro Decl. ¶ 9. Plaintiff declined. *Id.* That same day, Plaintiff submitted to Defendant Northport VA a Certification of Domestic Violence, Dating Violence, Sexual Assault, or Stalking and Alternative Documentation, Form HUD-5382, which had been executed by Ms. Small-Felix. Emergency Motion at 3; *see also* Compl. Exhibit D at 37-42.

On August 3, 2026, Plaintiff sent a notice to Defendant Northport VA reiterating his VAWA emergency transfer request. Compl. Exhibit B at 17-19. Within said notice, Plaintiff also requested that "[p]ursuant to the HUD-VASH program guidelines and VAWA emergency transfer policies" the Defendant Northport VA grant him "an extension of [his] initial voucher search period to a full 180 days from the original issuance date of July 8, 2026." *Id.* at 17-18.

---

[9] For a VAWA-related transfer, "[t]he veteran escaping violence must be admitted to the [receiving] VA medical facility caseload." *See* HUD-VASH Implementation Regulation at 65775. A veteran seeking to port because of VAWA emergency transfer "must [] port to a PHA that has a HUD-VASH program" but "if the receiving PHA does not have a HUD-VASH voucher available to lease, they may bill the initial PHA until a HUD-VASH voucher is available, at which point the porting veteran must be absorbed into the receiving PHA's program." *Id.* Still, nothing in an emergency VAWA-transfer plan "may be construed to supersede any eligibility or other occupancy requirements that may apply under a covered housing program." 24 C.F.R. § 5.2005(e)(13).

[10] Plaintiff, in his Reply, raises for the first time, that his initial displacement and his inability to lease locally on Long-Island, where his HUD-VASH voucher is issued, stems from a January 15, 2026 Temporary Restraining Order (TRO) that Ms. Small-Felix's mother has against Plaintiff for domestic violence. Reply at 1; *see also* Reply Exhibit H at 7, Dkt. 40-2. Plaintiff states that the VA had explicit knowledge that his displacement stemmed from domestic violence related to a TRO. Reply at 2. At this point, it is unclear if Plaintiff's VAWA emergency transfer request relates to threats of domestic violence by some third-party against Ms. Small-Felix, Ms. Small-Felix mother's allegations of domestic violence by Plaintiff, or both.

[11] A veteran with an ordinary Section 8 voucher may port without obtaining prior approval from the receiving VA facility and without the availability of a HUD-VASH voucher and associated case management services at said receiving facility. *See* 24 C.F.R. §§ 982.353, 982.355.

On August 4, 2026, Defendant Northport VA requested that Defendant CDLI convert Plaintiff's HUD-VASH voucher into a traditional Section 8 voucher, which would allow Plaintiff and his family to independently pursue its goal of moving to Florida. Compl. Exhibit G at 72; Emergency Motion at 4. Plaintiff messaged Defendant Northport VA thereafter and explicitly objected to any voucher alternatives outside the HUD-VASH program. Compl. Exhibit G1 at 79.

On August 5, 2026, Defendant Miami VA issued a letter memorializing its denial of Plaintiff's request to port his HUD-VASH voucher and explaining its reasoning. Gleaton Decl. ¶ 11; Compl. Exhibit H at 81. Defendant Miami VA reasoned that: (i) it was prioritizing Veterans experiencing homelessness in the local area, had utilized all of its vouchers for that population, and could not provide Plaintiff with the required case management services;[12] (ii) that Plaintiff had not utilized his HUD-VASH voucher but immediately requested to port; (iii) that Plaintiff did not any provide documentation establishing joint legal custody of the minor child he stated resides in the Miami area; and (iv) that HUD-VASH is for Veterans experiencing homeliness, and although the Miami VA sympathized with Plaintiff's significant other, Plaintiff himself is not the "recipient of domestic violence, dating violence, sexual assault, and/or stalking." *Id.*; *see also* Federal Defendants Opposition Declaration of La'Shon F. Black ¶¶ 6-10, Dkt. 38-1 ("Black Declaration" or "Black Decl."). Plaintiff submitted a rebuttal to Defendant Miami VA, and on August 14, 2026, Defendant Miami VA reaffirmed, via a letter to Plaintiff, that its original decision stands. Compl. Exhibit H1 at 83.

On August 17, 2026, Plaintiff requested Defendant Northport VA grant a tolling freeze of his HUD-VASH voucher due to administrative delays associated with his VAWA emergency

[12] Individuals and families who are eligible for HUD-VASH vouchers must receive case management services in conjunction with their acceptance of a HUD-VASH voucher. *HUD-VASH Implementation Regulation* at 65774-75; *see also* Gleaton Decl. ¶ 7.

porting request. Compl. Exhibit K at 93. On August 19, 2026, Defendant Northport VA informed Plaintiff that a tolling freeze could only be initiated once a rental unit has been identified and a Request for Tenancy (RFT) admitted, but that 30-day extensions of a HUD-VASH voucher may be requested. *Id.* at 92. On August 21, 2026, at another case management meeting, Plaintiff again inquired about a VAWA emergency transfer and was told by his caseworker that Defendant CDLI considered his transfer request incomplete and had requested addition information, particularly regarding the alleged domestic violence. Petroro Decl. ¶ 13.

On August 25, 2026, Defendant Northport VA submitted further documentation in support of VAWA emergency transfer to Defendant CDLI on behalf of Plaintiff. Gleaton Decl. ¶ 12; CDLI Opposition Exhibit 2 at 3, Dkt. 11-3. Defendant CDLI contacted New York State Homes and Community Renewal, New York State's Public Housing Agency responsible for administering New York's Section 8 Housing program in Nassau and Suffolk Counties, for guidance as to whether Plaintiff's HUD-VASH voucher could be ported to the Florida jurisdiction via a VAWA emergency transfer where the receiving Miami VA had previously denied Plaintiff's request to port and was advised it could not. Gleaton Decl. ¶¶ 3-4, 14. Defendant CDLI, through Defendant Northport VA, relayed this news to Plaintiff and informed him that it could both grant extensions of his HUD-VASH voucher in 30-day increments and that it could review an emergency transfer by Plaintiff to another jurisdiction where the eligibility requirement of case management is available. Gleaton Decl. ¶ 15; CDLI Opposition Exhibit 3 at 2, Dkt. 11-4 ("Email, dated September 25, 2026").

On August 28, 2026, Defendant Northport VA also informed Plaintiff how to administratively appeal Defendant Miami VA's decision to deny the portability of his HUD-VASH voucher. Petroro Decl. ¶ 14; Compl. Exhibit K at 89. On or about September 4, 2026,

Plaintiff was also informed of the opportunity to participate in a Miami-area Grant and Per Diem Transition-in-Place program and declined. Petroro Decl. ¶ 15. Plaintiff continues to hold his HUD-VASH voucher but has not yet used it to obtain housing in the New York area. *Id.* ¶ 16. On November 3, 2026, Defendant CDLI informed the Court that on or about October 26, 2026, it granted Plaintiff a 30-day extension on his HUD-VASH voucher, now set to expire December 5, 2026. *See* Defendant CDLI's Letter Notifying Court of Extension Grant, Dkt. 42. Plaintiff continues to have unfettered access to the VA's Secure Message system. Petroro Decl. ¶ 19.

**PROCEDURAL HISTORY**

On September 8, 2026, Plaintiff commenced this civil rights action against Defendants. *See generally* Compl. That same date, Plaintiff filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. Dkt. 4. The Court denied the portion of Plaintiff's Emergency Motion that sought a TRO and set a briefing schedule with respect to the portion of Plaintiff's Emergency Motion that sought a Preliminary Injunction. *See* Order, dated Sep. 9, 2026.

On October 16, 2026, Plaintiff filed another emergency motion seeking the same relief as the September 8, 2026, Emergency Motion, *see* Dkt. 27-29, and on October 18, 2026, the Court issued an order denying Plaintiffs additional Emergency Order as duplicative, reasoning that Plaintiff provided "the Court with no sufficient change in fact or circumstance to justify reevaluating the already denied Motion for Temporary Restraining Order, or to alter the timeline of the Court's ongoing Motion for Preliminary Injunction review." *See* Order, dated Oct. 18, 2026.

On October 21, 2026, Defendant CDLI filed a pre-motion conference request on an anticipated motion to dismiss, *see* Defendant CDLI's Letter to the Court (Oct. 21, 2026), Dkt. 30, and on October 22, 2026, Plaintiff filed a response to CDLI's pre-motion conference request. Dkt. 35. On October 23, 2026, the Court denied Defendant CDLI's pre-motion conference and set a

briefing schedule with respect to Defendant CDLI's motion to dismiss, which is set to conclude on January 6, 2027. *See* Order, dated Oct. 23, 2026.

On November 2, 2026, the portion of Plaintiff's Emergency Motion that sought a Preliminary Injunction became fully briefed. *See* CDLI Opposition; Federal Defendants' Opposition.

**LEGAL STANDARD**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 666-67 (2d Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To obtain a preliminary injunction, a plaintiff must satisfy all four of the following prerequisites:

> (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiffs' favor, (2) that they are likely to suffer irreparable injury in the absence of an injunction, (3) that the balance of hardships tips in their favor, and (4) that the public interest would not be disserved by the issuance of a preliminary injunction.

*Cumulus Media New Holdings Inc. v. Nielsen Co. (US), LLC*, 182 F.4th 108, 122, 124 (2d Cir. 2026) (quoting *Mendez v. Banks*, 65 F.4th 56, 63-64 (2d Cir. 2023)). In deciding a preliminary injunction motion, a court "may consider the entire record including affidavits and other hearsay evidence." *Helio Logistics, Inc. v. Mehta*, 22-cv-10047 (NSR), 2023 WL 1517687, at *2 (S.D.N.Y. Feb. 3, 2023); *accord Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010).

This standard is "'higher, however, where the movant seeks to modify the status quo by virtue of a mandatory preliminary injunction' or 'where the injunction being sought will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" *Cumulus Media*, 182 F.4th at 124 (quoting *A.H. ex rel. Hester v. French*, 985 F.3d 165, 176 n.39 (2d Cir. 2021)). Where either scenario applies, a

"higher standard requires plaintiffs 'show a clear or substantial likelihood of success on the merits and make a strong showing of irreparable harm.'" *Id.* (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)).

As Plaintiff is *pro* se, the Court reads Plaintiff's Emergency Motion liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This liberal construction does not, however, alter the underlying premise that preliminary injunctions are "an extraordinary and drastic remedy," and "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Wright & Miller's Federal Practice & Procedure § 2948 (2d ed. 1995) (emphasis in original)).

## DISCUSSION

### A. Individual Defendants

Plaintiff, while suing each of the Individual Defendants in both their individual and official capacity, seeks only injunctive and declaratory relief regarding his public housing benefits. "However, such equitable relief could be obtained against [the Individual Defendants] only in [their] official, not [their] individual, capacity." *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993). The Individual Defendants, in their individual capacities, do not have the authority to provide the remedies that Plaintiffs seeks. Accordingly, the Court dismisses the claims in Plaintiff's Emergency Motion, only, as to each Individual Defendant in their individual capacity.

### B. Subject Matter Jurisdiction

The Court next addresses the threshold issue of its subject matter jurisdiction.[13] "Since Congress first legislated in the area of veterans' benefits over fifty years ago, [38 U.S.C. § 511]

[13] Plaintiff, in his Reply, *see* Dkt. 40, had the opportunity to be heard on the Federal Defendants arguments that the claims in the Emergency Motion should be dismissed as against them for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and (h)(3). Despite this opportunity, Plaintiff did not respond to the Federal Defendant's subject matter jurisdiction arguments. *See* Dkt. 40.

has consistently precluded judicial review of veterans' benefits determinations." *Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1499 (2d Cir. 1992). Within the Veteran's Judicial Review Act ("VJRA"), 38 U.S.C. § 511 ("Section 511") provides:

> (a) The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to [exceptions set forth in] subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

There is, however, a path by which a veteran can challenge a benefits decision. One of the exceptions to Section 511 set forth in subsection (b) is for "matters covered by Chapter 72 of this title." 38 U.S.C. § 511(b)(4). Under Chapter 72, within one year of receipt of a VA decision, a veteran can file an appeal of said decision with the Board of Veterans' Appeals. 38 U.S.C. § 7104–05. Thereafter, a veteran may appeal to the Court of Veterans' Appeals, which has exclusive jurisdiction to review decisions of the Board of Veterans' Appeal. 38 U.S.C. § 7252(a). A decision by the Court of Veterans' Appeals may then be appealed to the Court of Appeals for the Federal Circuit, and finally, by writ of certiorari to the Supreme Court of the United States. 38 U.S.C. § 7292; 28 U.S.C. § 2072.

Absent from this pathway is the federal district court. "Although district courts continue to have 'jurisdiction to hear *facial* challenges of legislation affecting veterans' benefits,' other constitutional and statutory claims must be pursued within the appellate [pathway] Congress established in the VJRA." *Larrabee by Jones*, 968 F.2d at 1501 (quoting *Disabled Am. Veterans v. U.S. Dep't of Veterans Affs.*, 962 F.2d 136, 140 (2d Cir.1992)). District courts, pursuant to Section 511, are barred from reviewing any claim that amounts to a direct or indirect challenge to a VA benefits determination.

Here, Plaintiffs Emergency Motion alleges that Defendants wrongly: (i) denied his VAWA

emergency transfer application pursuant to VAWA, 34 U.S.C. § 12491, and its associated protections under 24 C.F.R § 5.2003; (ii) denied his Section 8 Portability rights pursuant to the Housing Act, 42 U.S.C. § 1437f(r), and its associated portability protections under 24 C.F.R § 982.354(c)(2); (iii) created administrative delays which require mandatory tolling of Plaintiff's voucher under 24 C.F.R § 982.303(b). *See generally*, Emergency Motion. These claims, although statutory, at their essence allege that Defendants wrongfully denied Plaintiff's application to port and his VAWA transfer request. Each of Plaintiff's claims bring challenges "under [] law[s] that affect[] the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans," and were "necessary" to that determination by the VA, such that Plaintiff's claims indirectly challenge his VA benefits determination. 38 U.S.C. § 511(a). Indeed, "'the courts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms,' or when statutes are 'used as a rhetorical cover to attack VA benefits determinations.'" *Hassan v. U.S. Dep't of Veterans Affs.*, 137 F. App'x 418, 420 (2d Cir. 2005) (quoting *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994)). Accordingly, the Court does not have the jurisdiction to review Plaintiff's allegations that the Federal Defendants wrongfully denied his application to port and his VAWA transfer request, benefits determinations, by violating statutes that informed the VA's decision.

However, the VJRA's restrictions do not impact this Court's authority to review Plaintiff's claims against Defendant CDLI. Section 511 only precludes a district court from reviewing "a decision *by the Secretary* under *a law that affects the provision of benefits* by the Secretary to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511 (emphasis added). Defendant CDLI is a non-governmental organization, detached from the VA, which Plaintiff alleges has made wrongful decisions regarding his housing applications. Defendant CDLI, as

evidenced by its letter to the Court granting Plaintiff a 30-day voucher extension, maintains some decision-making authority with respect to Plaintiff's benefits, and yet these decisions are not made by "the Secretary" of the VA such that the Court's review is barred by Section 511. *See* Defendant CDLI's Letter Notifying Court of Extension Grant, Dkt. 42; *see also* 24 C.F.R. §§ 982.303(b)–(c), 982.355(c)-(d) (charging certain voucher extension, suspension, and eligibility determinations with the PHA).

At bottom, the Court does not have subject matter jurisdiction over the claims in Plaintiff's Emergency Motion as to Federal Defendants. However, the Court does have subject matter jurisdiction over those same claims as to Defendant CDLI, and thus, addresses Plaintiff's preliminary injunction motion as to the claims against Defendant CDLI.[14]

**C. Preliminary Injunction**

Plaintiff argues that he is entitled to a preliminary injunction because "VAWA explicitly extends emergency transfer protections to non-veteran co-heads and affiliated households feeling abuse" and because "loss of federal housing assistance" is irreparable harm which "[m]onetary damages cannot remedy." Emergency Motion at 9. Defendants counter that Plaintiff does not satisfy the heightened standard for a preliminary injunction because he has not utilized administrative options to avoid irreparable harm and has not shown a clear and substantial likelihood of success on a claim requiring VAWA transfer. CDLI Opposition at 6.

**1. The Heightened Standard for Injunctive Relief Applies.**

The Court begins by determining the appropriate standard to apply before turning to whether Plaintiff has established the elements required to obtain the emergency injunctive relief

[14] The Court does not address the claims raised in Plaintiff's Complaint that are not asserted as a basis for Plaintiff's Emergency Motion. *See supra* note 4. Thus, the Court does not evaluate its subject matter jurisdiction over those additional claims, as to any Defendant, at this time.

requested. Because Plaintiff's requested relief would, in most instances, alter the status quo, rather than preserve it, the heightened standard applies to Plaintiff's Emergency Motion.

The status quo refers to "the last actual, peaceable uncontested status which preceded the pending controversy." *Cumulus Media*, 182 F.4th at 124 (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)); *see also Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024) (describing the difference between a "mandatory" injunction and a "prohibitory" injunction, the former of which requires a heightened standard, as follows: "the former typically requires the non-movant to take some action, whereas the latter typically requires the non-movant to refrain from taking some action"). Here, Plaintiff asks the Court to order that Defendants toll the expiration of his HUD-VASH voucher, process and approve his VAWA emergency transfer, waive any localized lease-up policy or residency requirement for his emergency portability, immediately place him HUD-VASH "light touch" aftercare status or approve temporary remote case management, and enjoin Defendants from altering his access to VA Secure Messaging. *See* Emergency Motion at 5. All requests, other than the tolling of Petitioner's voucher and the enjoining of his access to VA Secure Messaging, require Defendants to take actions which alter the state of affairs that preceded this dispute.

As Plaintiff, in seeking to modify the status quo, clearly satisfies the first ground for applying the heightened standard, the Court does not address the second ground, whether the injunction will provide the movant with substantially all relief sought that cannot be undone even if Defendants prevail on the merits. Plaintiff must, consistent with the heightened standard, demonstrate "a clear or substantial likelihood of success on the merits" as well as "a strong showing of irreparable harm." *Cumulus Media*, 182 F.4th at 124.

**2. Plaintiff Has Failed to Show Irreparable Harm.**

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Yang v. Kosinski*, 960 F.3d 119, 128 (2d Cir. 2020) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). To show irreparable harm, "[t]he movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (internal citations omitted).

Plaintiff has not demonstrated irreparable harm. Plaintiff argues that "[l]oss of federal housing assistance and forced placement in an unsafe shelter alongside convicted felons constitutes irreparable harm as a matter of law" as is the "destruction of Plaintiff's legal child custody proceedings" all of which "[m]onetary damages cannot remedy." Emergency Motion at 9. However, these are not the circumstances in which Plaintiff finds himself.

As Defendant CDLI asserts, there are several solutions available to Plaintiff to remedy and or mitigate his alleged harm that do not require the Court to take the drastic measure of issuing a preliminary injunction. Plaintiff can: (i) apply for 30-day extensions to his HUD-VASH voucher, *see* Email, dated September 25, 2026at 2, Dkt. 11-4; (ii) submit an emergency transfer to another jurisdiction where the HUD-VASH eligibility requirement of case management is available as advised by Defendant Northport VA, *see id.*; (iii) allow Defendants to convert Plaintiff's HUD-VASH into a general section 8 voucher such that Plaintiff may port to Florida without the need for VA involvement or approval, *see* Compl. Exhibit G at 72; (iv) accept the opportunity to participate

in a Miami-area Grant and Per Diem Transition-in-Place program as offered by Defendants, *see* Petroro Decl. ¶ 15; (v) appeal Defendant Miami VA's denial of Petitioner's HUD-VASH transfer within the appropriate administrative channels, *see* Compl. Exhibit K at 89.

In sum, Defendants offer Plaintiff several alternate avenues to ensure that harm is not actualized. Plaintiff has failed to establish why any of these options would not mitigate the alleged harm of loss of federal housing.[15] *Cf. Ahlschlager v. Imhof,* 24-CV-8267 (OEM) (JMW), 2024 WL 5168732, at *4 (E.D.N.Y. Dec. 19, 2024) (finding irreparable harm where the "Plaintiff has shown that Defendant's proposed solution . . . would not mitigate Plaintiff's irreparable harm because, in the time it would require Plaintiff to obtain [Defendant's solution], Plaintiff would be" irreparably harmed); *Sunrise Dev., Inc. v. Town of Huntington, New York*, 62 F. Supp. 2d 762, 778 (E.D.N.Y. 1999) (same). Although the Court recognizes that Plaintiff states he denied these other options because he wishes to maintain case management services, some of the above options do allow for case management services to continue, and a wish to continue case management services is somewhat inconsistent with Plaintiff's request in his Emergency Motion that the Court order Defendants allow Plaintiff to be placed into HUD-VASH "'light touch' aftercare status" as opposed to full blown case management services. Emergency Motion at 1-2.

Plaintiff also asks the Court to enjoin Defendants from restricting his access to VA Secure Messaging. *Id.* at 2. On August 6, 2026, Defendant Northport VA warned Plaintiff that his use of VA Secure Messaging violated the Standards of Conduct and warned him that violations can result in being temporarily blocked. *See* Compl. Exhibit I at 85-86. But Plaintiff continues to have

[15] Plaintiff provides the Court with only superficial and fleeting references of plans to seek custody of a minor child that resides in Florida. Federal Defendants note this lack of documentation establishing joint legal custody of a minor residing in the Miami area in denying Plaintiff's application to port. Black Decl. ¶ 8. Thus, Plaintiff has failed to establish such a child should be considered for purposes of the Court's irreparable harm analysis. Even if seeking the custody of said child were considered, Defendants have offered Plaintiff alternative paths to port to Florida, and thus Plaintiff's alleged harm is found not to be irreparable for the same reasons his potential loss of federal housing was.

unfettered access to the VA's Secure Message system. Petroro Decl. ¶ 19. One email warning regarding proper use of the VA's Secure Message system without more is not sufficient to establish "an injury that is neither remote nor speculative, but actual and imminent." *Rodriguez ex rel. Rodriguez*, 175 F.3d at 234.

For these reasons, Plaintiff has failed to establish that he will suffer irreparable harm should the Court not issue a preliminary injunction.

**3. Plaintiff Has Failed to Show a Likelihood of Success on the Merits.**

As Plaintiff has failed to establish irreparable harm, the Court need not address Plaintiff's likelihood of success on the merits. However, assuming arguendo that Plaintiff could establish irreparable harm, Plaintiff's Emergency Motion fails to meet the heightened standard for mandatory injunctions on this prong as well.

"For mandatory injunctions, which 'alter rather than maintain the status quo,' such as the one at issue here, 'the movant must show a clear or substantial likelihood of success' on the merits." *New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012); *see also Cumulus Media*, 182 F.4th at 124 (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)).

First, Plaintiff alleges that VAWA explicitly protects non-veteran co-heads of households on HUD-VASH vouchers, and that Plaintiff properly provided the Miami VA with notice and the required forms to initiate the required transfer, such that Defendants' refusal to approve transfer violates federal law. *See* Emergency Motion at 7, 9. Second, Plaintiff alleges that under the Section 8 Portability rules—42 U.S.C. § 1437f(r) and 24 C.F.R. § 982.354(c)(2)—restriction of transfers within the first 12-months applies exclusively to leased participants, and not to unleased search-voucher holders, such as himself. *Id.* at 9. Finally, Plaintiff alleges that administrative

delays and agency inaction should result in a mandatory tolling of his voucher search period. *Id.* The Court takes each argument in turn.

Plaintiff's primary allegation is that VAWA explicitly protects non-veteran co-heads of households on HUD-VASH vouchers, and that Plaintiff properly provided Defendants with notice and the required forms to initiate the required transfer, such that Defendants' refusal to approval transfer violates VAWA, 34 U.S.C. § 12491, a federal law. Even if Plaintiff were correct that, despite the inability of Defendant Miami VA to provide the required case management associated with a HUD-VASH, Defendants are nonetheless required to port his voucher to that facility, *see HUD-VASH Implementation Regulation*, 89 Fed. Reg. at 65,774,[16] VAWA "does not contain a private right of action that would permit [Plaintiff] to sue [Defendants]," particularly regarding housing rights. *Evans v. Bronxworks, Inc.*, 24-cv-7507 (LJL), 2025 WL 3469952, at *4 (S.D.N.Y. Dec. 3, 2025) (dismissing plaintiff's action for emergency transfer to a new apartment under VAWA); *see also Smith v. CP VI Braddock Station, LLC*, 1:25-cv-01266-MSN-WEF, 2026 WL

[16] The HUD Implementation Regulation indicates that veterans can "port prior to receiving approval from the receiving VA medical facility" if "a person" or "any family member" has been "the victim of domestic violence, dating violence, sexual assault, or stalking, and who reasonably believes themselves to be threatened with imminent harm from further violence by remaining in the dwelling unit." *Id.* The regulation then states "[t]he veteran escaping violence *must* be admitted to the VA medical facility caseload," including "participants seeking a move beyond the catchment area of the VA medical facility while maintaining a HUD-VASH voucher," and that "if the receiving PHA does not have a HUD-VASH voucher available to lease, they may bill the initial PHA until a HUD-VASH voucher is available, at which point the porting veteran must be absorbed into the receiving PHA's program." *Id.* at 65,775 (emphasis added). Despite Defendant CDLI's arguments otherwise, it seems unlikely a veteran can port to an alternate VA facility without first applying and that VA facility must accept him regardless of availability, but if a veteran applies to a receiving VA facility first before porting that application somehow negates VAWA's mandate that the receiving facility must accept the veteran regardless of availability. *See* CDLI Opposition at 5 ("The provision thus permits a VAWA-related port while approval from the receiving VA facility remains pending; it does not provide for a port after the receiving VA facility has denied the request and advised that it will not provide case management services."). Moreover, if Defendants can deny a VAWA emergency transfer based on their own inability to provide services because emergency transfer provisions "may [not] be construed to supersede any eligibility or other occupancy requirements that may apply under a covered housing program," then Defendants can always deny transfer and there is no emergency transfer mandate at all. 24 C.F.R. § 5.2005(e)(9), (13). However, as the Federal Defendants note, VAWA's emergency transfer provisions apply to "a *tenant* receiving rental assistance through, or residing in a unit subsidized under, a covered housing program" who seeks to escape an unsafe dwelling unit, and Plaintiff is not yet a tenant, but merely a voucher holder. 24 C.F.R. § 5.2005(e)(2) (emphasis added); *see also* 34 U.S.C. § 12491(e)(1)(B)(i).

2928882, at *4 (E.D. Va. Sep. 29, 2026) (finding, where Plaintiff challenged nonrenewal of a lease under VAWA, that "there is no private right of action to enforce § 12491's protections"); *Haywood v. Warner Robins Hous. Auth.*, 5:25-cv-00296-CAR, 2026 WL 867389, at *2 (M.D. Ga. Mar. 30, 2026) (noting plaintiff had no private action under VAWA to sue a public housing agency for lease termination, and that "[i]nstead, the statutory scheme mandates [t]he Secretary of Housing and Urban Development and the Attorney General [to] implement and enforce [34 U.S.C. § 12491]"); *see also United States v. Morrison*, 529 U.S. 598 (2000) (holding, in the context of civil claims against alleged domestic violence offenders by victims, that there is no civil private remedy under VAWA); *Esposito v. New York,* 07 Civ. 11612 (SAS), 2010 WL 4261396, at *1 n.18 (S.D.N.Y. Oct. 25, 2010), *aff'd*, 453 F. App'x 37 (2d Cir. 2011) (same, in the sexual assault context). Further, it is unsettled whether plaintiffs may seek redress for VAWA protections through 42 U.S.C. § 1983. *See Evans*, 2025 WL 3469952, at *6 (noting that "at least one district court has determined that VAWA rights are enforceable under § 1983" but others have found the opposite). Plaintiff's VAWA claims, as pleaded, do not establish a clear likelihood of success.

Plaintiff next alleges that although Section 8 Portability rules—42 U.S.C. § 1437f(r) (the "Housing Act") and 24 C.F.R. § 982.354(c)(2)—place some restrictions on transfers within the first 12-months of a voucher, this restriction applies exclusively to leased participants, and not to unleased search-voucher holders, such as himself, such that the Defendants' application of said rule to his circumstances is incorrect. *See* Emergency Motion at 9. Although the Second Circuit has yet to weigh in, district courts in this circuit have routinely held that no private right of action exists for Plaintiff's second claim, via the Housing Act, either. "By its express terms, [the Housing Act] grants no [] right" to sue Defendants for violations of the housing laws. *Renaissance Equity Holdings LLC v. Donovan*, 12-CV-1639 (FB) (SMG), 2013 WL 2237547, at *5 (E.D.N.Y. May

21, 2013) (declining to imply a private right of action under 42 U.S.C. § 1437f(a)); *see also 35-41 Clarkson LLC v. New York City Hous. Auth.*, 11 CIV. 6770 (PKC), 2012 WL 5992094, at *8-9 (S.D.N.Y. Nov. 30, 2012) (declining to imply a private right of action under 42 U.S.C. § 1437f(a) and noting "[n]either the text of the statute nor that of the regulations contains rights-creating language"); *Montgomery v. City of New York*, 09 Civ. 6145 (RJH), 2010 WL 3563069, at *3 (S.D.N.Y. Sep. 7, 2010) ("the Housing Act does not expressly grant a private right of action to individuals who [] are suing HUD over the poor quality of their Section 8 housing" pursuant to 42 U.S.C. § 1437f(o)(8)). Although courts analyze whether a private right of action exists on a subsection specific basis, Plaintiff has presented no reason to believe 42 U.S.C. § 1437f(r) should give rise to a private right of action. *See Louis v. New York City Hous. Auth.*, 152 F. Supp. 3d 143, 157 n. 12 (S.D.N.Y. 2016) ("Even assuming that [24 C.F.R. § 982.354(b)(4)] was implicated here, which is far from clear, we do not see language in 42 U.S.C. § 1437f, as amended by VAWA 2005, suggesting that plaintiffs have a private right to enforce it against [the defendant]"). As such, Plaintiff's Housing Act claim, as pleaded, also does not establish a clear likelihood of success.

Plaintiff alleges that administrative delays and agency inaction should result in a mandatory tolling of his voucher search period pursuant to 24 C.F.R § 982.303(b), a HUD regulation implementing the Housing Act. Emergency Motion at 7. Although not with respect to the specific regulation raised here, the Second Circuit has found that there is generally no private right of action for HUD regulations implementing the Housing Act. *See Taylor ex rel. Wazyluk v. Hous. Auth. of City of New Haven*, 645 F.3d 152, 153-54 (2d Cir. 2011); *see also Logan v. Matveevskii*, 57 F. Supp. 3d 234, 274 (S.D.N.Y. 2014).

To the extent Plaintiff's claims might be construed as raising claims under the Administrative Procedure Act that Defendants' decisions are "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law," *see* 5 U.S.C § 706(2)(A), Plaintiff still has not established a likelihood of success on the merits. "An agency action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Alzokari v. Pompeo*, 973 F.3d 65, 70 (2d Cir. 2020) (internal quotation marks omitted). In its August 5, 2026 letter, Defendant Miami VA articulated, in detail, its reasons for denying Plaintiff's request to port. Black Decl. ¶¶ 6-10. Plaintiff's correspondence with his social worker at Defendant Northport VA also show continued efforts to address Plaintiff's housing needs and goals, while working within the articulated restrictions of the HUD-VASH system. *See e.g.*, Petroro Decl. ¶¶ 9, 15. Plaintiff has not established likelihood of success that the Defendants' decisions to deny the portability of his HUD-VASH voucher or his VAWA emergency transfer were unreasonable or unexplained, particularly in light of the deferential standard afforded to agencies. *See Kakar v. USCIS*, 29 F.4th 129, 132 (2d Cir. 2022) (articulating a court's differential standard of review in APA cases).

Plaintiff's claims, as pleaded, fail to establish a clear or substantial likelihood of success on the merits.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims that Defendants wrongly denied his VAWA emergency transfer application on behalf of himself and his co-head of household pursuant to 34 U.S.C. § 12491 and 24 C.F.R § 5.2003, wrongly denied his Section 8 Portability right pursuant to 42 U.S.C. § 1437f(r) and 24 C.F.R § 982.354(c)(2), and wrongfully created administrative delays which require mandatory tolling of Plaintiff's voucher under 24 C.F.R § 982.303(b), are

dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (h)(3) for lack of subject matter jurisdiction, as to the Federal Defendants only. The Individual Defendants, in their individual capacities, are separately dismissed, as to the claims addressed in the Emergency Motion, for lack of authority to provide the requested equitable relief. Plaintiff's Emergency Motion seeking a preliminary injunction is denied. Even affording Plaintiff the liberal construction to which he is entitled as a *pro se* litigant, *see Erickson*, 551 U.S. at 94, the allegations Plaintiff asserts are not enough to warrant the extraordinary relief he seeks.

SO ORDERED.

/s/
ORELIA E. MERCHANT
United States District Judge

November 24, 2026
Brooklyn, New York